IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, | CV 20-22-GF-KLD |
| Plaintiff, | |
| vs. | ORDER |
| BRENDA BURMAN, Commissioner, U.S. Bureau of Reclamation; DAVID BERNHARDT, Secretary, U.S. Department of Interior, | |
| Defendants. | |

Plaintiff Alliance for the Wild Rockies, Inc. ("Alliance"), brought this action

under the Endangered Species Act ("ESA") challenging the Bureau of

Reclamation's ("Reclamation") alleged ongoing, unpermitted take of bull trout

through its operation of the Milk River Irrigation Project located east of Glacier

National Park. Reclamation moved to dismiss Alliance's Complaint under Fed. R.

Civ. P. 12(b)(1), arguing Alliance's claim was moot. (Doc. 7.) The Court denied

the motion finding effective relief could be granted since the United States Fish

and Wildlife Service ("USFWS") had not yet issued an Incidental Take Statement

("ITS") permitting Reclamation's take of bull trout. The USFWS has since issued

an ITS. (Doc. 20-1.) Reclamation now moves to dismiss pursuant to Fed. R. Civ. P.

1

12(h)(3) because the issuance of the ITS has rendered Alliance's Complaint moot. (Doc. 19.) For the following reasons, Reclamation's motion is GRANTED.

## I.  Background

Alliance filed this action on March 25, 2020 challenging Reclamation's unpermitted incidental take of bull trout in violation of under Section 9 of the ESA. (Doc. 1.) Alliance alleges Reclamation's water control and delivery structures in the St. Mary River drainage, as part of the Milk River Irrigation Project, are negatively affecting the native fish population resulting in the mortality of bull trout, a threatened species. (Doc. 1 at ¶¶ 11-23.) The parties agree that Reclamation's operations are subject to the requirements of the ESA and that taking bull trout is a violation of the ESA.

At the time Alliance filed its Complaint, Reclamation did not have an ITS from the USFWS which would exempt it from violating the ESA. 16 U.S.C. § 1539(a)(1)(B). However, Reclamation was engaged in formal consultation with the USFWS regarding bull trout in the St. Mary Unit, and on September 4, 2020 the USFWS issued a Biological Opinion ("BiOp") and accompanying ITS for the St. Mary Unit. (Doc. 20-1.) It is undisputed that the BiOp and ITS have rendered Alliance's request for injunctive relief moot. (Doc. 22 at 7.) The parties disagree, however, as to whether declaratory relief remains available.

## II.    Legal Standard

Reclamation moves to dismiss pursuant to Fed. R. Civ. P. 12(h)(3). A motion to dismiss under Rule 12(h)(3) challenges the court's subject matter jurisdiction over the action. *See* Fed. R. Civ. P. 12(h)(3) ("If the Court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). As the party asserting jurisdiction, the plaintiff bears the burden of proving its existence. *Kingman Reef Atoll Investments, L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008.) The court will presume jurisdiction is lacking until the plaintiff proves otherwise. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

In considering a 12(h)(3) motion challenging the facts supporting subject-matter jurisdiction, a court may consider extra-pleading materials submitted by the parties. *Assoc. of American Medical Colleges v. United States*, 217 F.3d 770, 778-79 (9th Cir. 2000); *see also McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) ("the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."). A federal court is one of limited jurisdiction; it must dismiss a case upon concluding it lacks jurisdiction. *High Country Resources v. F.E.R.C.*, 255 F.3d 741, 747 (9th Cir. 2001).

## III.   Discussion

### A. The ESA

Congress enacted the ESA to "provide a program for the conservation of . . . endangered species and threatened species," and to "provide a means whereby the ecosystems upon which endangered species and threatened species may be conserved[.]" 16 U.S.C. § 1531(a)(3). The ESA implements its goal of recovering threatened and endangered species to the point where protective measures are no longer needed through Sections 7 and 9 of the Act. *See Babbitt v. Sweet Home Chapter of Cmtys. For a Great Or.*, 515 U.S. 687, 699 (1995) (Congress passed the ESA "to halt and reverse the trend toward species extinction, whatever the cost.").

Section 9 of the ESA prohibits any person from "taking" an endangered species. 16 U.S.C. § 1538(a)(1)(B). The ESA defines "take" to include "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). The USFWS has extended the ESA's "take" prohibition to certain threatened species, including bull trout. 50 C.F.R. § 17.31(a). The USFWS, however, may find the taking of a species to be "incidental to, and not the purpose of, the carrying out of an otherwise lawful activity." 16 U.S.C. § 1539(a)(1)(B). In such a situation, the USFWS may exempt the "incidental take" from Section 9's take prohibition. The incidental take

exemption is typically authorized through an incidental take permit during the

Section 7 consultation process. 16 U.S.C. § 1536(b)(4).

Section 7 of the ESA requires federal agencies to ensure that their actions

are "not likely to jeopardize the continued existence of any endangered species or

threatened species or result in the destruction or adverse modification" of a

species' critical habitat. 16 U.S.C. § 1536(a)(2). If an agency's action may affect a

listed species or critical habitat, the agency must engage in consultation with the

consulting agency, the USFWS in this case. 16 U.S.C. § 1536(b). Consultation

begins with the preparation of a biological assessment and culminates in the

USFWS' issuance of a BiOp assessing whether the action will likely jeopardize the

listed species or result in destruction or adverse modification of its critical habitat.

50 C.F.R. § 402.14(g) – (h).

If the USFWS concludes that the agency action will involve "the taking of

an endangered or a threatened species *incidental* to the agency action [,]" it must

provide an ITS. 16 U.S.C. § 1536(b)(4) (emphasis added). The ITS specifies the

impact of the incidental taking on the species, specifies reasonable and prudent

measures necessary or appropriate to minimize the impact, and sets forth the terms

and conditions the federal agency must comply with. 16 U.S.C. § 1536(b)(4)(C).

"As long as any takings comply with the terms and conditions of the [ITS], the

action agency is exempt from penalties for such takings." *Oregon Natural Resources Council v. Allen*, 476 F.3d 1031, 1034 (9th Cir. 2007).

    B. <u>Motion to Dismiss</u>

    Reclamation moves to dismiss Alliance's Complaint based on mootness. The USFWS issued a BiOp and ITS on September 4, 2020, exempting Reclamation from Section 9 liability so long as it complies with certain terms and conditions. (Doc. 20-1.) Reclamation therefore argues that Alliance's Section 9 claim is moot. Reclamation further asserts that the declaratory relief Alliance seeks is not available and would offer no effective or meaningful relief. Finally, Reclamation contends granting Alliance declaratory relief would serve as an improper advisory opinion.

    Mootness is a jurisdictional issue requiring the Court to determine whether a case or controversy exists under Article III of the Constitution. *Maldonado v. Lynch*, 786 F.3d 1155, 1160 (9th Cir. 2015). A case must present a live controversy to resist dismissal for mootness. *Maldonado*, 786 F.3d at 1160. "The party asserting mootness bears the burden of establishing that there is no effective relief that the court can provide." *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006). The burden to establish mootness is heavy. "[A] case is not moot where *any* effective relief may be granted." *Johanns*, 450 F.3d at 461 (emphasis in

original).

The Ninth Circuit has determined that "where, as here, both injunctive and declaratory relief are sought but the request for injunctive relief is rendered moot, the case is not moot if declaratory relief would nevertheless provide meaningful relief." *Center for Biological Diversity v. Lohn*, 511 F.3d 960, 964 (2007). The Ninth Circuit has applied this rule to ESA cases and has determined that under certain circumstances the availability of declaratory relief may save cases from mootness. *See, e.g. Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1173-75 (9th Cir. 2002) (cessation of alleged wrongful conduct did not render declaratory relief moot although injunctive relief was unwarranted); *But see*, *Lohn*, 511 F.3d at 964 (declaratory relief would serve no purpose where the plaintiff's "ultimate objective" was met).

Contrary to Reclamation's argument that this Court may not provide declaratory relief in ESA cases, the Ninth Circuit's guidance on this issue clearly indicates that this Court may retain jurisdiction over this matter if it finds declaratory relief would provide Alliance meaningful relief. *See e.g.*, *Johanns*, 450 F.3d at 462 (allowing ESA claim requesting declaratory relief to go forward); *Badgley*, 309 F.3d at 1174 (assuming jurisdiction over ESA claim seeking declaratory relief). However, where an alleged violation has been remedied by

7

agency conduct, the agency's action moots a claim for declaratory relief if no effective relief can be granted. *Defenders of Wildlife v. Jackson*, 791 F. Supp. 2d 96, 109 (D.D.C. 2011).

In *Defenders*, the plaintiff sought injunctive and declaratory relief requesting the court order the Environmental Protection Agency to engage in consultation with the USFWS and declare the agency acted illegally by failing to consult. *Defenders*, 791 F. Supp. 2d at 109. The court found the injunctive relief claim moot because the agency began consulting with the USFWS after the suit was filed. The court also determined that the agency's initiation of consultation mooted the declaratory relief claim because "an order declaring the Agency acted illegally by failing to consult . . . would accomplish nothing because the Agency had already begun consulting and, thus, has provided the [plaintiff] with the relief they seek." *Defenders*, 791 F. Supp. 2d at 109. The court concluded that granting declaratory relief under such circumstances would result in an "improper advisory opinion." *Defenders*, 791 F. Supp. 2d at 109.

In *Center for Biological Diversity v. Lohn*, the Ninth Circuit found the plaintiff's claim for declaratory relief was moot because "no live controversy remain[ed] between the parties." 511 F.3d at 964. There, the plaintiff requested the court declare unlawful the policy an agency used to determine whether a species

should be listed under the ESA. The agency listed the species as endangered while the lawsuit was pending, prompting the Ninth Circuit to find that declaring the challenged policy unlawful "would serve no purpose" because the plaintiff's "ultimate objective" of having the species listed was achieved. *Lohn*, 511 F.3d at 964. The court additionally concluded that even if the improper policy was applied to other species determinations, that occurrence was "too remote and too speculative a consideration to save this case from mootness." *Lohn*, 511 F.3d at 964.

The Ninth Circuit found the circumstances in *Forest Guardians v. Johanns* necessitated a different result. 450 F.3d 455. There, the plaintiff argued the United States Forest Service violated the ESA by failing to engage in Section 7 consultation with the USFWS. The plaintiff accordingly sought declaratory and injunctive relief. Upon filing suit, the Forest Service reinitiated consultation which mooted the plaintiff's claim for injunctive relief. *Johanns*, 450 F.3d at 462. The Ninth Circuit declined to find the plaintiff's request for declaratory relief moot, however, because the case involved a continuing practice. Specifically, the grazing permits at issue "require[d] that the Forest Service obtain from FWS annual concurrence and that the guidance criteria . . . have been met." *Johanns*, 450 F.3d at 462. The court additionally found declaratory relief warranted because "the

Forest Service's practice of not complying with [its] requirements is likely to persist despite the recent re-consultation." *Johanns*, 450 F.3d at 462. The court therefore found that declaratory judgment "would ensure that the Forest Service does not continue to fail" to meet its responsibilities under the ESA. *Johanns*, 450 F.3d at 462.

Here, Alliance seeks a declaration that "Reclamation is violating the ESA." (Doc. 1 at 14.) However, because the USFWS issued a BiOp and ITS governing Reclamation's predicted incidental take of bull trout, it is undisputed that Reclamation is not violating the ESA.[1] (Doc. 20-1 at 42-44.) Accordingly, the USFWS' action has mooted Alliance's request that the Court "[d]eclare that Reclamation is violating the ESA." A declaration that Reclamation's past conduct was in violation of the ESA would "serve no purpose" where Alliance's "ultimate objective" – the issuance of an ITS – has occurred. *Lohn*, 511 F.3d at 960.

Alliance argues that although the ITS has been issued in this case, the Court retains jurisdiction to consider its request for declaratory relief because, like in *Johanns*, the case involves a continuing practice and an agency with a history of violating the law. This matter is distinguishable from *Johanns* and instead falls in

---

[1] As explained, the ITS exempts Reclamation from Section 9 liability and resolves Alliance's request that this Court order Reclamation to obtain an ITS.

line with the authority finding declaratory relief under this procedural posture would result in an improper advisory opinion.[2] For example, the court in *Johanns* found declaratory judgment would provide the plaintiffs with effective relief because it would govern the agency's actions during a specified term, ensuring the agency did not fail to meet its continuing consultation responsibilities under the ESA. The court supported its reasoning with the fact that the agency had resisted those responsibilities throughout the litigation. *Johanns*¸ 450 F.3d at 462.

The record in this case does not indicate that Reclamation's past non-compliance with the ESA "is likely to persist". *Johanns*, 450 F.3d at 462. During this litigation, Reclamation has not disputed that it is required to obtain an ITS. Rather, Reclamation has actively engaged in consultation with the USFWS to obtain an ITS. (Doc. 8-5.) Reclamation has also indicated its intent to comply with the terms of the issued ITS. (Doc. 20-2 at ¶¶ 5-6.)

*Johanns* is also distinguishable because Reclamation does not have any

---

2 *See, e.g. Oregon Wild v. Connor*, 2012 WL 3756327, *3 (D. Or. Aug. 27, 2012) (action challenged by plaintiff was explicitly authorized under Section 7 through the issuance of an ITS, mooting plaintiff's claims and rendering challenged actions "no longer even allegedly wrongful."); *Sw. Ctr. For Biological Diversity v. Forest Serv.*, 82 F. Supp. 2d 1070, 1079 (D. Ariz. 2000) ("it would be academic for the Court to consider [Plaintiff's] demand for a declaratory judgment that the Forest Service was in violation of section 7(a)(2) of the [ESA] *when the Complaint was filed*, but not now[.]") (emphasis in original).

continuing obligation to obtain an ITS, and Reclamation is not required to annually concur with the USFWS to retain the ITS.[3] As such, there is no need to "ensure" Reclamation meets its responsibilities under the ESA; it has already met them by obtaining an ITS. *See Alliance for the Wild Rockies v. U.S. Dept. of Agriculture*, 772 F.3d 592, 600, n. 4 (9th Cir. 2014) (distinguishing *Johanns* where the agency did not have "a continuing obligation to engage" in challenged ESA requirement). Reclamation's operation of the St. Mary Unit without an ITS is therefore not a "continuing and brooding presence, cast[ing] what may well be a substantial adverse effect on the interests of the petitioning parties." *Lohn*, 511 F.3d at 964.

Finally, the court in *Johanns* determined that declaratory judgment would provide the plaintiffs with effective relief *during* the specified permit term. Here, Alliance requests the Court issue a declaratory judgment that would govern Reclamation's actions *after* the ITS term concludes. Alliance's prospective request presents issues of ripeness and is not the narrow relief sought in the Complaint. *Plum Creek Timber Company, Inc. v. Trout Unlimited*, 255 F. Supp. 2d 1159, 1164-65 (D. Idaho 2003) (jurisdiction to provide declaratory relief exists where a claim is ripe for adjudication, meaning the parties seek more than an advisory

---

3 Additionally, unlike in *Johanns* where the agency resisted the permit requirements, Reclamation has not disputed its obligation to comply with the ITS terms and conditions.

opinion and "one's fears are sufficiently real and immediate[.]") (quoting

*DImperio v. United States*, 575 F. Supp. 248 (D.N.J. 1983) (internal quotations

omitted)).

Alliance alternatively argues that this Court has jurisdiction to consider the

merits because this case falls within an exception to the mootness doctrine.

Alliance first argues that the voluntary cessation exception applies. "[A]

defendant's voluntary cessation of a challenged practice does not deprive a federal

court of its power to determine the legality of the practice." *City of Mesquite v.*

*Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). Under such circumstances, "[a]

case might become moot if subsequent events made it absolutely clear that the

allegedly wrongful behavior could not reasonably be expected to recur." *Friends of*

*the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 189 (2000) (quoting

*United States v. Concentrated Phosphate Export Assn.¸*393 U.S. 199, 203 (1968)).

Here, Reclamation did not voluntarily cease operating the St. Mary Unit

without an ITS. Rather, Reclamation initiated consultation with the USFWS

concerning its operation of the St. Mary Unit. The USFWS thereafter issued a

BiOp and ITS exempting Reclamation from Section 9 liability. Additionally,

because Reclamation is now operating under the ITS and has acted to comply with

the terms of the ITS,[4] the Court is convinced that "the challenged conduct cannot be reasonably expected to start up again." *Laidlaw*, 528 U.S. at 189. The voluntary cessation exception does not save this action from mootness.

Alliance next argues that the "capable of repetition yet evading review" exception to mootness applies. "The exception applies only where (1) the duration of the challenged action is too short to allow full litigation before it ceases; and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again." *Badgley*, 309 F.3d at 1173 (quoting *Greenpeace Action v. Franklin*, 14 F.3d 1324 (9th Cir. 1992)). The exception does not apply.

First, the Court is not convinced that the challenged conduct – Reclamation's operation of the St. Mary Unit without an ITS – is of too short a duration that it cannot be fully litigated. In fact, Alliance's Complaint states that the challenged action began in 2000. (Doc. 1 at ¶ 23.) Twenty years is more than enough time to litigate a case. Further, Alliance has not shown that Section 9 challenges inherently evade full adjudication. *See*, *e.g.*, *Cold Mountain v. Garber*, 375 F.3d 884, 889-90 (9th Cir. 2004); *Center for Biological Diversity, et al. v. Marina Point Development Associates*, 434 F. Supp. 2d 789, 795-96 (C.D. Cal.

---

4 For example, Reclamation has successfully tested an adult fish screen and will not operate the St. Mary canal until fish screens are installed on all gates conveying water. *See* Doc. 20-2 at ¶¶ 4-6.

2006); *Alliance for the Wild Rockies v. U.S. Dept. of Agriculture*, 772 F.3d 592, 605 (9th Cir. 2014).

Second, Alliance argues that it could be subjected to the challenged action again because there is a possibility that Reclamation could fail to obtain a new ITS once the term of the current ITS lapses. "Federal courts are not authorized to address such theoretical possibilities." *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994) (overruled on other grounds). Even if Reclamation hypothetically fails to obtain a new ITS but continues to take bull trout in violation of the ESA, that conduct would constitute an entirely new violation subject to judicial review. *Oregon Wild*, 2012 WL 3756327, *3 (because new violations are subject to a jurisdictional sixty-day notice requirement, they must be asserted in a new lawsuit). Additionally, such hypothetical conduct could be temporarily or permanently enjoined until an ITS is issued. The availability of such relief runs counter to "[t]he purpose of the capable of repetition but evading review exception to the mootness doctrine . . . to facilitate review of an action that is likely to recur *and be completed* before the court can act." *American Wild Horse Preservation Campaign, et al. v. Salazar*, 800 F. Supp. 2d 270, 274 (D.D.C. 2011) (emphasis in original).

## IV.    Conclusion

Having considered Reclamation's motion, the Court determines that dismissal is warranted. Reclamation's incidental take of bull trout has been authorized by the ITS. Accordingly, Alliance has achieved its relief sought and the Section 9 claim is moot. A declaratory judgment concerning the lawfulness of Reclamation's past conduct has no relation to Reclamation's future conduct and would be an improper advisory opinion. *See Oregon Wild*, 2012 WL 3756327, *3 (action challenged by plaintiff was explicitly authorized under Section 7 through the issuance of an ITS, mooting plaintiff's claims and rendering challenged actions "no longer even allegedly wrongful."); *Defenders of Wildlife, et al. v. Martin*, 454 F.Supp.2d 1085, 1105 (E.D. Wash. 2006) (concluding that the issuance of a declaratory judgment about moot conduct "would have no [future] effect and would be in the nature of an advisory opinion.").

Accordingly, **IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 19) is **GRANTED** and this matter is **DISMISSED** with prejudice.

**IT IS ORDERED**.

DATED this 30th day October, 2020.

_____

Kathleen L. DeSoto
United States Magistrate Judge